Filed 06/21/18　　　Case 18-22453　　　Doc 225

8 Pages

THOMAS A. WILLOUGHBY, State Bar No. 137597
PAUL J. PASCUZZI, State Bar No. 148810
FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP
400 Capitol Mall, Suite 1750
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
twilloughby@ffwplaw.com
ppascuzzi@ffwplaw.com

Attorneys for the Chapter 11 Trustee,
W. Donald Gieseke

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>ECS REFINING, INC.,<br><br>　　　　Debtor. | CASE NO.: 18-22453-D-11<br>Chapter 11<br>DCN: FWP-10<br><br>Date:　　　June 20, 2018 [Per OST]<br>Time:　　　10:30 a.m.<br>Courtroom:　34<br>　　　　　　501 I Street, 6th Floor<br>　　　　　　Sacramento, CA |

**INTERIM ORDER ON EMERGENCY MOTION FOR AN INTERIM ORDER (1) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; (2) AUTHORIZING POST-PETITION FINANCING; (3) SCHEDULING A FINAL HEARING; AND (4) GRANTING RELATED RELIEF**

This matter came before the Court on June 20, 2018 upon the Emergency Motion for an Interim Order (1) Authorizing Use of Cash Collateral Pursuant to 11 USC § 363; (2) Authorizing Post-Petition Financing; (3) Scheduling a Final Hearing; and (4) Granting Related Relief ("Motion") filed by W. Donald Gieseke, the duly appointed Chapter 11 Trustee (the "Trustee") for ECS Refining, Inc. ("Debtor").

NOW, THEREFORE, based upon the Motion, offers of proof, and the pleadings and other submissions in this case and, after due deliberation and sufficient cause appearing therefor, the parties represent to the Court as follows:

**BACKGROUND**

A.　　The Debtor filed a voluntary petition for relief under chapter 11 of the United

RECEIVED
June 20, 2018
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0006304579

-1-

Fourth Interim Order Authorizing
Use of Cash Collateral and
Setting Interim Hearing Date

States Bankruptcy Code ("Bankruptcy Code") with this Court April 24, 2018 (the "Petition Date").

B. On May 2, 2018, the Court entered its Order Granting Emergency Ex Parte Motion on Stipulation for Immediate Appointment of Chapter 11 Trustee (Docket No. 91). On May 8, 2018, the Court entered an order appointing the Trustee (Docket No. 99). A creditors' committee has not been appointed.

C. SummitBridge National Investments V LLC ("Secured Lender" or "SummitBridge") asserts that as of the Petition Date, the Debtor was indebted to Secured Lender in the approximate amount in excess of $25,000,000 and additional fees and expenses owed pursuant to applicable loan documents (hereafter such indebtedness and all accrued but unpaid interest, fees and costs and all other obligations, contingent liabilities, and swap liabilities incurred or existing as of the Petition Date shall be referred to collectively as the "Pre-Petition Secured Debt").

D. Secured Lender claims that the Pre-Petition Secured Debt is secured by a valid and perfected first priority lien and security interest in substantially all of the Debtor's property and all proceeds (including insurance) thereof, including but not limited to all of Debtor's accounts, equipment, inventory, goods, work in process, general intangibles, fixtures, trademarks, patents, other personal property assets and all proceeds thereof (the "Pre-Petition Collateral").

E. Trustee on behalf of the Debtor is in critical need of the release of funds during the pendency of its chapter 11 case on an emergency basis. In order to avoid immediate and irreparable harm Trustee has requested that Secured Lender consent to the limited use of Secured Lender's cash collateral, as defined in Section 363(a) of the Bankruptcy Code (the "Cash Collateral") for the expenses and payments, and in the order and priority, set forth on Exhibit 1 hereto, all of which the Trustee believes are necessary to avoid immediate and irreparable harm (collectively the "Approved Expenses").

F. Trustee has an immediate need to use Cash Collateral in order to permit, among other things, the orderly continuation of the operation of the Debtor's business, to maintain business relationships with vendors, suppliers and customers, to make payroll and to satisfy other

working capital needs.

      G.     The proposed use of Cash Collateral is necessary and appropriate for the continued operation of the Debtor's business and management and preservation of its assets.

      H.     Secured Lender is willing to consent to the use of Cash Collateral subject to the terms and conditions set forth herein.

      I.     Trustee has requested entry of this Order pursuant to Bankruptcy Rules 4001(b) and 4001(d). Absent entry of this Order, the Debtor's estate will suffer immediate and irreparable harm. Trustee believes that the use of Cash Collateral in accordance with this Order is in the best interests of the Debtor's estate.

      J.     Trustee believes that sufficient and adequate notice of the Motion and the hearing with respect thereto appears to have been given pursuant to Bankruptcy Rules 2002, 4001(b) and (d) and 9014, and no timely objections were filed.

## **ORDER**

Based upon the foregoing, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, effective as of the date set forth below that:

      1.     <u>Approval</u>. The Motion is granted and approved as set forth herein.

      2.     <u>Authorization to Use Cash Collateral</u>. Trustee, on behalf of the Debtor, is hereby authorized to use Cash Collateral for the purpose of preserving and maximizing value of the estate for the Approved Expenses. Unless the Secured Lender consents in writing, Trustee shall not pay any items that are not Approved Expenses or amounts exceeding the Approved Expenses.

      3.     <u>Additional Adequate Protection</u>. As used herein the term "Cash Collateral Use Amount" includes all cash collateral used by the Trustee hereunder. To provide Secured Lender with the adequate protection required by Sections 361(1), (2) and 363(e) of the Bankruptcy Code:

      (a)     <u>Replacement Lien</u>: To the extent of the Cash Collateral Use Amount the Secured Lender is hereby granted and provided with a security interest in and first priority lien and security interest upon all post-petition inventory, chattel paper, accounts and general intangibles and all proceeds thereof and all proceeds of the Pre-Petition Collateral (the "Adequate Protection Collateral").

(b) <u>Further Adequate Protection</u>: To the extent that there is a diminution in value in Secured Lender's Pre-Petition Collateral after the Petition Date that is not offset by the value of the replacement lien in Adequate Protection Collateral, Secured Lender is hereby granted an allowed super-priority administrative claim pursuant to Section 507(b) of the Bankruptcy Code which shall have priority over any and all other indebtedness, liabilities and obligations of the Debtor, now in existence or hereafter incurred by the Debtor.

(c) <u>Section 552</u>: The Secured Lender's liens upon and security interests in the Pre-Petition Collateral continue in the proceeds and profits of the Pre-Petition Collateral, as provided in section 552(b) of the Bankruptcy Code without exception, including without limitation all post-petition inventory and accounts receivable.

4. Nothing herein shall prevent Secured Lender from seeking additional adequate protection or other relief, nor shall anything hereunder preclude Trustee from opposing any additional adequate protection or other relief sought by the Secured Lender.

5. Nothing in this Order shall preclude or have any *res judicata* or collateral estoppel effect on either the Trustee or SummitBridge (the "Parties") except to the limited amount required respecting the specific authorization to use cash collateral and the granting of the requested replacement liens, and the Parties preserve any and all other rights and claims, and any defenses thereto, including but not limited to the rights of: (a) the Trustee to dispute the validity of SummitBridge's lien and claim; (b) the Trustee to file any type of affirmative recovery action or claim against SummitBridge, and/or any related party (including a marshaling claim); (c) the Trustee's right to seek to surcharge SummitBridge's liens, and/or (d) SummitBridge to assert claims or defenses of any kind in the Bankruptcy Case and/or against third parties who may also be liable for its asserted claims.

6. <u>Automatic Perfection</u>. This Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the replacement liens granted to Secured Lender in the Adequate Protection Collateral. Secured Lender, in its discretion, shall be entitled to file a certified copy of this Order in any filing or recording office in any jurisdiction in which Debtor conducts its businesses or possesses any personal property and, in such event, the filing or

recording officer is authorized and directed to file or record such certified copy of this Order.

7. <u>Carve Out</u>. Provided that the Trustee does not seek Court approval of post-petition financing on terms without the consent of SummitBridge (a "Non-Consensual Financing"), then SummitBridge agrees to a carve out (the "Carve Out") of $325,000 from SummitBridge's collateral comprised of post-petition accounts receivable for the payment of approved fees and costs of the Trustee and his professionals incurred in the chapter 11 case which shall be binding in any chapter 7 case; provided, however, the Carve Out shall not be available in the event of a Non-Consensual Financing and further provided that the Carve Out shall not apply to any fees and costs incurred to investigate, research, challenge or otherwise avoid the obligation or lien of SummitBridge, including but not limited to any attempts to prime SummitBridge's lien.

8. <u>Accounting by Trustee</u>. Within ten (10) calendar days after the entry of this Order, Trustee shall account to Secured Lender for all cash, checks, notes, drafts, instruments, acceptances or other property representing cash or other proceeds of Pre-Petition Collateral in Trustee's possession or control (collectively, "Cash Proceeds"). All Cash Proceeds in the possession of Trustee or in any accounts of Debtor in financial or other institutions, including any lock box, brokerage or escrow, pledge or depository accounts, as of the Petition Date, shall be deemed proceeds of the Pre-Petition Collateral.

9. <u>Insurance</u>. Trustee shall maintain insurance coverage on the Pre-Petition Collateral and the Adequate Protection Collateral for the full replacement value therefor and to cause Secured Lender to be named as a loss payee for the insurance policies. In addition, Trustee shall maintain adequate casualty and general liability insurance and shall name Secured Lender as an additional insured on all insurance policies.

10. <u>Financial Reporting</u>. Trustee shall provide Secured Lender with reasonable access to Debtor's books and records and shall provide a summary of all Approved Expenses paid by the Trustee hereunder. Trustee shall reasonably provide Secured Lender with periodic updated accounts receivable aging and summary of all inventory.

11. <u>Reliance Upon Order</u>. Secured Lender is consenting to Trustee's use of Cash Collateral in reliance on this Order. The liens and security interests granted to Secured Lender

hereunder and the rights of Secured Lender pursuant to this Order with respect to the Adequate Protection Collateral shall not in any way be altered, impaired, modified, or otherwise adversely affected.

12.     <u>Survivability</u>. The provisions of this Order shall inure to the benefit of Trustee, Debtor and Secured Lender and shall be binding upon Trustee, Debtor and its estate. The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered converting this case to a chapter 7 case or any order which may be entered confirming or consummating any plan of reorganization of Debtor.

13.     <u>Final Hearing</u>. A final hearing on the Motion shall be held before this Court on July 11, 2018 at 10:30 a.m. in Courtroom 34, United States Bankruptcy Court, Eastern District of California. The Trustee's authorization as set forth herein to use the Secured Lender's Cash Collateral in accordance with the Budget, shall continue only through the date set forth above for the further hearing on the Motion.

14.     The request for approval of the Post-Petition Financing is denied without prejudice.

15.     The Trustee is authorized to take reasonable and necessary steps in his business judgement in the exercise of his role as the liquidating fiduciary for the bankruptcy estate to halt or reduce operations if in his business judgement he determines it is appropriate to do so.

16.     Trustee shall promptly mail copies of this Order and notice of the final hearing to Secured Lender, its counsel, the U.S. Trustee, the Debtor and its counsel, any other secured

///
///
///
///
///
///
///
///

creditor herein, any creditor requesting special notice, and the 20 Largest Unsecured Creditors herein, which mailing must be accomplished no later than June 22, 2018.

APPROVED AS TO FORM

MARKUS WILLIAMS YOUNG & ZIMMERMANN LLC

By: /s/ James T. Markus
    JAMES T. MARKUS
    Attorneys for SummitBridge National Investments V LLC

Dated: June 21, 2018

Date: _____

Robert S. Bardwil, Judge
United States Bankruptcy Court

_____
UNITED STATES BANKRUPTCY JUDGE

**ECS Refining, Inc.**
**Proposed Cash Distributions**

| | | |
|---|---:|---|
| **6/15/2018 Cash in Bank** | 975,567 | |
| | | Includes checks outstanding and checks being cut 6/15 that were approved in the last cash |
| Outstanding Checks | (443,804) | colateral order. |
| **Net Book Cash** | 531,763 | |
| | | |
| **Increases in Cash** | | |
| Reciepts in Transit | 702,738 | California SB20 Check mailed 6/13 |
| | | |
| **Total Projected Cash** | 1,234,501 | |
| | | |
| **Net Priority Payments** | | |
| Regular Payroll (w/ 401(k) & FSA) | 420,000 | |
| Payroll Taxes | 120,000 | |
| Commissions | 65,000 | |
| Workers Comp | 165,000 | |
| Benefits | 211,000 | Will go down as employees continue to resign. |
| | | To avoid litigation and preserve assets securing |
| Santa Clara Partial Rent Payment | 30,000 | loans. |
| Sub-total | 1,011,000 | |
| | | |
| **Net Available** | 223,501 | |
| | | |
| **Recommended Payments (in order of priority)** | | |
| Employee Expense Reimbursements | 6,000 | |
| PPE / Supplies / Consumables | 49,528 | |
| | | Includes $100k in potential Disney and Comcast payments that may be necessary to keep these |
| Settlements | 188,516 | AMS customers. |
| Vendors / Freight / Fuel | 265,168 | |
| | 503,212 | |

**Note: No payments will be made without confirmed funds in the bank**

Should additional funds be available, they will not be disbursed without
prior approval of the secured lender.