**8 Pages**

1  THOMAS A. WILLOUGHBY, State Bar No. 137597
PAUL J. PASCUZZI, State Bar No. 148810
2  FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP
3  400 Capitol Mall, Suite 1750
Sacramento, CA  95814
4  Telephone: (916) 329-7400
Facsimile: (916) 329-7435
5  twilloughby@ffwplaw.com
ppascuzzi@ffwplaw.com
6
Attorneys for the Chapter 11 Trustee,
7  W. Donald Gieseke

8                    UNITED STATES BANKRUPTCY COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                        SACRAMENTO DIVISION

11  In re:                                    CASE NO.: 18-22453-D-11

12  ECS REFINING, INC.,                       Chapter 11

13                    Debtor.                  DCN:  FWP-11

14                                            Date:           June 29, 2018 [Per OST]
                                             Time:           10:30 a.m.
15                                            Courtroom:      34
                                                             501 I Street, 6th Floor
16                                                           Sacramento, CA

17           **FIFTH EMERGENCY MOTION FOR AN INTERIM
         ORDER (1) AUTHORIZING THE USE OF CASH COLLATERAL
18        PURSUANT TO 11 U.S.C. § 363; (2) SCHEDULING A FINAL
           HEARING; AND (3) GRANTING RELATED RELIEF**

19           W. Donald Gieseke, the duly-appointed and acting Chapter 11 Trustee (the "Trustee") in

20  the ECS Refining, Inc. (the "Debtor") case (the "Bankruptcy Case"), hereby files this Fifth

21  Emergency Motion for an Interim Order (1) Authorizing Interim Use of Cash Collateral Pursuant

22  to 11 U.S.C. §363; (2) Scheduling a Final Hearing; and (3) Granting Related Relief (the

23  "Motion") and in support of this Motion, respectfully represents as follows.

24                              **INTRODUCTION**

25           As reported at the last cash collateral hearing in this matter, the Trustee and his

26  professionals have been working very hard to implement a process for a reasonably soft landing

27  of this case through a potential sale of assets.  Income from the Debtor's operations has been

28  barely sufficient to fund payroll during the past weeks of operation.  The Trustee and his

professionals have been examining all potential solutions for how to proceed.

At the last hearing in this matter, the Trustee obtained the use of cash collateral to operate for two weeks for the purpose of obtaining a stalking horse bid acceptable to the Trustee and SummitBridge National Investments V LLC ("SummitBridge") on or before June 26, 2018.  At that time, there were several interested parties performing due diligence.  As of the date of this Motion, however, no bid has been made by the primary interested party, although the Trustee believes such a bid will be made very soon.

The purpose of this Motion is to obtain approval of the use of cash collateral for another short period for the purpose of either pursuing a sale if an acceptable bid is obtained or shutting down operations if no timely bid is forthcoming.  The Trustee has presented two cash collateral budgets to SummitBridge for its review and approval covering each situation.  At the hearing on the last cash collateral motion, the Court authorized the Trustee to take reasonable and necessary steps in the Trustee's business judgment in the exercise of his role as the liquidating fiduciary for the bankruptcy estate to halt or reduce operations if, in his business judgment, the Trustee determines it is appropriate to do so.  Thus, by this Motion, the Trustee is seeking authority to use cash collateral sufficient to cover both situations, either pursuing a sale or ceasing operations.

## BACKGROUND FACTS

1.  On April 24, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code ("Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of California ("Court").

2.  On May 2, 2018, the Court entered its Order Granting Emergency Ex Parte Motion on Stipulation for Immediate Appointment of Chapter 11 Trustee (Docket No. 91).  On May 8, 2018, the Court entered an order appointing the Trustee (Docket No. 99).  A creditors' committee has not been appointed.

3.  Based on the pleadings filed by the Debtor, the Debtor provides recycling and asset disposition solutions ranging from e-waste shredding to information technology and industrial asset resale.  The Debtor is a leader in innovative electronics recycling, offering both end-of-life and asset management services to a variety of markets, by utilizing state-of-the-art

technology and over 37 years of experience to provide the most comprehensive, responsible solutions in the industry, maximizing value recovery and ensuring data security while safeguarding the future of the planet. The Debtor's three tenets are security, sustainability, and value recovery. The Debtor has facilities in Santa Clara, Santa Fe Springs and Stockton, California; Medford and Portland, Oregon; Mesquite, Texas; Columbus, Ohio; and Rogers, Arkansas. The Debtor currently has approximately 341 employees ("Employees"). The Employees include approximately: (i) 325 full-time employees; (ii) 0 part-time employees; and (iii) 16 contract employees. *See* Debtor's Emergency Ex Parte Motion for approval of DIP Financing and use of Cash Collateral, Docket No. 12, pp. 6-7 (the "Debtor's DIP Financing Motion").

4.     SummitBridge asserts that as of the Petition Date, the Debtor was indebted to SummitBridge in excess of $25,000,000 and additional fees and expenses owed pursuant to applicable loan documents (hereafter such indebtedness and all accrued but unpaid interest, fees and costs and all other obligations, contingent liabilities, and swap liabilities incurred or existing as of the Petition Date shall be referred to collectively as the "Pre-Petition Secured Debt"). *See* paragraph 7 of the Declaration of W. Donald Gieseke ("Gieseke Declaration") filed herewith.

5.     SummitBridge claims that the Pre-Petition Secured Debt is secured by a valid and perfected first priority lien and security interest in substantially all of the Debtor's property and all proceeds (including insurance) thereof, including but not limited to all of Debtor's accounts, equipment, inventory, goods, work in process, general intangibles, fixtures, trademarks, patents, other personal property assets and all proceeds thereof (the "Pre-Petition Collateral").

6.     On May 8, 2018, the Trustee filed an Emergency Motion for an Interim Order (1) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363; (2) Scheduling a Final Hearing; and (3) Granting Related Relief at Docket No. 100 (the "First Emergency Motion"). On May 9, 2018, the Court entered the Interim Order on the First Emergency Motion at Docket No. 117 and set a final hearing on May 23, 2018 ("Interim Order on First Emergency Motion"). The Court granted the relief in the Interim Order on First Emergency Motion on a final basis by order dated May 24, 2018. Docket No. 162.

7.      On May 17, 2018, the Trustee filed a Second Emergency Motion for an Interim Order (1) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363; (2) Scheduling a Final Hearing; and (3) Granting Related Relief at Docket No. 100 (the "Second Emergency Motion"). On May 23, 2018, the Court entered the Interim Order on the Second Emergency Motion at Docket No. 152 and set a final hearing on June 6, 2018 ("Interim Order on Second Emergency Motion"). The Court granted the relief in the Interim Order on Second Emergency Motion on a final basis by order dated June 6, 2018. Docket No. 184.

8.      On June 4, 2018, the Trustee filed a Third Emergency Motion for an Interim Order (1) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363; (2) Scheduling a Final Hearing; and (3) Granting Related Relief at Docket No. 100 (the "Third Emergency Motion"). On June 6, 2018, the Court entered the Interim Order on the Third Emergency Motion at Docket No. 185 and set a final hearing on June 20, 2018 ("Interim Order on Third Emergency Motion").

9.      On June 15, 2018, the Trustee filed an Emergency Motion for an Interim Order (1) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363; (2) Authorizing Post-Petition Financing; (3) Scheduling a Final Hearing; and (4) Granting Related Relief at Docket No. 205 (the "Fourth Emergency Motion"). At a hearing on June 20, 2018, the Court denied the proposed post-petition financing without prejudice. On June 21, 2018, the Court entered the Interim Order on the Fourth Emergency Motion at Docket No. 225 and set a final hearing on July 11, 2018 ("Interim Order on Fourth Emergency Motion").

10.     At this point, the Trustee believes that the best option to provide the most benefit to all creditors is for the Trustee to continue operating the Debtor's business for at least the next few days or a week to allow the opportunity for an acceptable bid to be presented. If no such bid is timely obtained, then the Trustee will need to cease or reduce operations quickly. The two scenarios presented in Exhibit 1 (continuing operations) and Exhibit 2 (shutdown) are attached to the Exhibit Document filed herewith. Gieseke Declaration ¶ 15.

11.     The next payroll is due to be funded by July 5, 2018; however, if operations are halted, a final payroll would happen shortly after shutdown. In order to avoid immediate and irreparable harm, the Trustee has requested that SummitBridge consent to the limited use of

SummitBridge's cash collateral, as defined in Section 363(a) of the Bankruptcy Code (the "Cash Collateral") for the expenses and payments and in the order and priority set forth on Exhibit 1 in the case of continuing operation and as set forth on Exhibit 2 in the case of a shutdown, each of which the Trustee believes are necessary to avoid immediate and irreparable harm (collectively the "Approved Expenses"). Gieseke Declaration ¶ 16.

12.     As part of the Cash Collateral agreement, the Trustee has requested that SummitBridge agree to an additional carve out from its collateral and the proceeds thereof in the amount of $100,000 bringing the total carve out to $425,000 to be available for payment of approved fees and costs of the Trustee and his professionals incurred in the chapter 11 case (the "Carve Out"). The Carve Out would be binding in any subsequent chapter 7 case. There have been no waivers of the right to surcharge collateral under section 506(c), nor is there any waiver in connection with the use of cash collateral. *Id.* ¶ 17.

13.     The Trustee has provided SummitBridge's financial advisor access to information as it is obtained by the Trustee and his financial advisors. SummitBridge is reviewing the cash collateral information, but the Trustee is informed and believes that SummitBridge likely will stipulate to the emergency use of Cash Collateral for the Approved Expenses as set forth on either Exhibit 1 or Exhibit 2 in return for a replacement lien on post-petition assets and a limited adequate protection order substantially on the same terms and conditions as the existing Interim Order on Fourth Emergency Motion. SummitBridge still needs to review Exhibits 1 and 2 and provide its consent. *Id.* ¶ 18. The proposed Interim Order on Fifth Emergency Motion for an Interim Order (1) Authorizing the Use of Cash Collateral Pursuant to 11 U.S.C. §363; (2) Scheduling a Final Hearing; and (3) Granting Related Relief is attached as Exhibit 3 to the Exhibit Document filed herewith ("Interim Order on Fifth Emergency Motion").

## **REQUEST FOR RELIEF**

14.     The Trustee requests the Court to:

a.     Authorize the emergency use of the SummitBridge cash collateral effective immediately, through July 11, 2018 or such other date as the Court orders as provided in Exhibits 1 and 2 to the Exhibit Document filed herewith as described above;

b.     Grant SummitBridge a replacement lien on any and all post-petition assets of the Debtor of the same kind and character and to the same extent, validity and priority as SummitBridge's pre-petition liens (the "Replacement Liens") to the extent of use of cash collateral;

c.     Grant the adequate protection as is described in more detail in the Interim Order on Fifth Emergency Motion including:  (i) the granting of an allowed superpriority administrative claim pursuant to Section 507(b) of the Bankruptcy Code; and (ii) providing that SummitBridge's liens continue in the proceeds and profits of the pre-petition collateral pursuant to section 552(b) of the Bankruptcy Code;

d.     Provide in the Interim Order on Fifth Emergency Motion that there shall be an additional $100,000 carve out effective immediately from SummitBridge's collateral for the payment of approved fees and costs of the Trustee and his professionals incurred in the chapter 11 case, which shall be binding in any chapter 7 case;

e.     Provide in the Interim Order on Fifth Emergency Motion that SummitBridge shall not be required to take any further steps to perfect the Replacement Liens granted through the Motion;

f.     Provide in the Interim Order on Fifth Emergency Motion that nothing in the Order shall preclude or have any *res judicata* or collateral estoppel effect on either the Trustee or SummitBridge (the "Parties") except to the limited amount required respecting the specific authorization to use cash collateral and the granting of the requested Replacement Liens, and the Parties preserve any and all other rights and claims, including but not limited to the rights of:  (a) the Trustee to dispute the validity of SummitBridge's lien and claim; (b) the Trustee to file any type of affirmative recovery action or claim against SummitBridge, and/or any related party (including a marshaling claim); (c) the Trustee to seek to surcharge SummitBridge's liens; and/or (d) SummitBridge to assert claims in the Bankruptcy Case and/or against third parties who may also be liable for its asserted claims;

g.     Treat the hearing as a request to approve interim use of cash collateral, to approve interim use to the extent necessary to avoid immediate and irreparable harm to the

bankruptcy estate, and to set a final hearing on the use of cash collateral on or about July 11 or such other date as the Court prefers; and

   h. Grant such further relief as is just and appropriate in the circumstances of this Motion.

## JURISDICTION

15. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334, 11 U.S.C. §§ 361 and 363, and Federal Rule of Bankruptcy Procedure 4001. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## ARGUMENT

16. Bankruptcy Code section 363(c)(2) provides that a debtor in possession may not use, sell, or lease cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. §363(c)(2). Federal Rule of Bankruptcy Procedure 4001(b)(2) permits the Court to authorize the interim use of cash collateral "as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2).

17. Based on the evidence submitted by the Debtor in support of the Debtor's DIP Financing Motion, SummitBridge asserts a security interest in the Debtor's property, which may include the Debtor's cash collateral. In this case, SummitBridge is reviewing the proposed use of cash collateral by the Trustee on the terms set forth herein, including the granting of a replacement lien.

18. The Court previously authorized debtor in possession financing from Butch and Sundance LLC, an entity related to the owners of the Debtor, in the amount of $100,000 and granted Butch and Sundance LLC an administrative claim under sections 503(b) and 507(a)(2) in that amount. See Docket No. 69.

19. By this Motion, the Trustee seeks formal authority to use SummitBridge's cash collateral as outlined above to pay necessary expenses to avoid immediate and irreparable harm.

The Trustee must expend such funds to pay employees, taxes, insurance and out of pocket administrative expenses necessary to maintain the going concern value of the Debtor's business. *See* All documents filed in support of Debtor's DIP Financing Motion, on file herein, and incorporated herein by this reference.

20.　Pursuant to Bankruptcy Code section 361, adequate protection can be in the form of the Replacement Liens to the same extent, validity, and priority as SummitBridge's Pre-Petition Liens on the Debtor's post-petition assets and can include the other adequate protection sought by SummitBridge in the Interim Order on Fifth Emergency Motion attached as Exhibit 3 to the Exhibit Document.

21.　At present, the Trustee seeks to preserve the value of the business as a going concern while he evaluates any potential sale options or preserve the Debtor's assets in the event of a shut down.　Granting this Motion will enable the Trustee to preserve such value for the benefit of all creditors.

22.　Pursuant to Bankruptcy Local Rule 4001-1(c)(3), the Interim Order on Fifth Emergency Motion does not contain any provision listed in Local Rule 4001-1(c)(3)(A)-(L).

WHEREFORE, the Trustee requests the Court to enter the Interim Order on Fifth Emergency Motion granting the relief requested herein.

Dated: June 27, 2018

FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP

By: */s/ Paul J. Pascuzzi*　　　　　　
Paul J. Pascuzzi
Attorneys for the
Chapter 11 Trustee,
W. Donald Gieseke