**5 Pages**

THOMAS A. WILLOUGHBY, State Bar No. 137597
PAUL J. PASCUZZI, State Bar No. 148810
FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP
400 Capitol Mall, Suite 1750
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
twilloughby@ffwplaw.com
ppascuzzi@ffwplaw.com

Attorneys for the Chapter 11 Trustee,
W. Donald Gieseke

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>ECS REFINING, INC.,<br><br>            Debtor. | CASE NO.: 18-22453-D-11<br><br>Chapter 11<br><br>DCN: FWP-11<br><br>Date:         June 29, 2018 [Per OST]<br>Time:        10:30 a.m.<br>Courtroom:   34<br>                  501 I Street, 6th Floor<br>                  Sacramento, CA |

**DECLARATION OF W. DONALD GIESEKE IN SUPPORT OF
FIFTH EMERGENCY MOTION FOR AN INTERIM ORDER
(1) AUTHORIZING THE USE OF POSTPETITION CASH
COLLATERAL PURSUANT TO 11 U.S.C. § 363; (2) SCHEDULING
A FINAL HEARING; AND (3) GRANTING RELATED RELIEF**

I, W. Donald Gieseke, state and declare as follows:

1. I am the duly appointed and acting Chapter 11 Trustee in the above-captioned case (the "Trustee"). I make this Declaration in support of Chapter 11 Trustee's Fifth Emergency Motion for an Interim Order (1) Authorizing Interim Use of Cash Collateral Pursuant to 11 U.S.C. §363; (2) Scheduling a Final Hearing; and (3) Granting Related Relief ("Motion"). All terms not otherwise defined shall have the same meaning as in the Motion.

2. All facts set forth in this Declaration are based on my personal knowledge, upon information supplied to me by people who report to me, upon information supplied to me by my professionals and consultants, upon my review of relevant documents, or upon my opinion based

on my experience and knowledge with respect to the Debtor's operations, financial condition and related business issues. The documents submitted herewith, referenced herein or otherwise relied upon by me for purposes of this Declaration are the business records of the Debtor, prepared and kept in ordinary and regularly conducted business activities of the Debtor, and used by me for those purposes. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

3. On April 24, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code ("Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of California ("Court")

4. On May 7, 2018, I was informed that I had been selected as the Chapter 11 Trustee for the ECS Refining, Inc. bankruptcy case. On May 8, 2018, the Bankruptcy Court entered its order approving my appointment as the Chapter 11 Trustee.

5. After being informed that I had been selected, I contacted my proposed counsel, and began the process of investigating what immediate actions needed to be taken. I then contacted the principals of the Debtor and had lengthy discussions about the case and the immediate cash needs for payroll and other emergency expenses.

6. Based on the pleadings filed by the Debtor, the Debtor provides recycling and asset disposition solutions ranging from e-waste shredding to information technology and industrial asset resale. The Debtor is a leader in innovative electronics recycling, offering both end-of-life and asset management services to a variety of markets, by utilizing state-of-the-art technology and over 37 years of experience to provide the most comprehensive, responsible solutions in the industry, maximizing value recovery and ensuring data security while safeguarding the future of the planet. The Debtor's three tenets are security, sustainability, and value recovery. The Debtor has facilities in Santa Clara, Santa Fe Springs and Stockton, California; Medford and Portland, Oregon; Mesquite, Texas; Columbus, Ohio; and Rogers, Arkansas. The Debtor currently has approximately 341 employees ("Employees"). The Employees include approximately: (i) 325 full-time employees; (ii) 0 part-time employees; and (iii) 16 contract employees. *See* Debtor's Emergency Ex Parte Motion for approval of DIP

1 Financing and use of Cash Collateral, Docket No. 12, pp. 6-7 (the "Debtor's DIP Financing
2 Motion").

3 7. SummitBridge National Investments V LLC ("SummitBridge") asserts that as of
4 the Petition Date, the Debtor was indebted to SummitBridge in excess of $25,000,000 and
5 additional fees and expenses owed pursuant to applicable loan documents (hereafter such
6 indebtedness and all accrued but unpaid interest, fees and costs and all other obligations,
7 contingent liabilities, and swap liabilities incurred or existing as of the Petition Date shall be
8 referred to collectively as the "Pre-Petition Secured Debt").

9 8. SummitBridge claims that the Pre-Petition Secured Debt is secured by a valid and
10 perfected first priority lien and security interest in substantially all of the Debtor's property and
11 all proceeds (including insurance) thereof, including but not limited to all of Debtor's accounts,
12 equipment, inventory, goods, work in process, general intangibles, fixtures, trademarks, patents,
13 other personal property assets and all proceeds thereof (the "Pre-Petition Collateral").

14 9. On May 8, 2018, I filed an Emergency Motion for an Interim Order
15 (1) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363; (2) Scheduling a Final
16 Hearing; and (3) Granting Related Relief at Docket No. 100 (the "First Emergency Motion"). On
17 May 9, 2018, the Court entered the Interim Order on the Motion at Docket No. 117 and set a final
18 hearing on May 23, 2018 ("Interim Order on First Emergency Motion").

19 10. On May 17, 2018, I filed a Second Emergency Motion for an Interim Order
20 (1) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363; (2) Scheduling a Final
21 Hearing; and (3) Granting Related Relief at Docket No. 100 (the "Second Emergency Motion").
22 On May 23, 2018, the Court entered the Interim Order on the Second Emergency Motion at
23 Docket No. 152 and set a final hearing on June 6, 2018 ("Interim Order on Second Emergency
24 Motion").

25 11. On June 4, 2018, I filed a Third Emergency Motion for an Interim Order
26 (1) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363; (2) Scheduling a Final
27 Hearing; and (3) Granting Related Relief at Docket No. 100 (the "Third Emergency Motion").
28 On June 6, 2018, the Court entered the Interim Order on the Third Emergency Motion at Docket

1 No. 185 and set a final hearing on June 20, 2018 ("Interim Order on Third Emergency Motion").

2      12.     On June 15, 2018, I filed an Emergency Motion for an Interim Order (1) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363; (2) Authorizing Post-Petition Financing; (3) Scheduling a Final Hearing; and (4) Granting Related Relief at Docket No. 205 (the "Fourth Emergency Motion"). At a hearing on June 20, 2018, the Court denied the proposed post-petition financing without prejudice. On June 21, 2018, the Court entered the Interim Order on the Fourth Emergency Motion at Docket No. 225 and set a final hearing on July 11, 2018 ("Interim Order on Fourth Emergency Motion").

     13.     As reported at the cash collateral hearing on June 20, 2018, my professionals and I have been working very hard to implement a process for a reasonably soft landing of this case through a potential sale of assets. Income from the Debtor's operations has been barely sufficient to fund payroll during the past weeks of operation. My professionals and I have been examining all potential solutions for how to proceed.

     14.     As of the cash collateral hearing on June 20, 2018, there were several interested parties performing due diligence with respect to a sale of the Debtor's assets. As of the date of this Motion, no bid has been made by the primary interested party. However, I believe that such a bid will be made very soon.

     15.     At this point, I believe that the best option to provide the most benefit to all creditors is for me to continue operating the Debtor's business for at least the next few days or a week to allow the opportunity for an acceptable bid to be presented. If no such bid is timely obtained, then I will need to cease or reduce operations quickly. The two scenarios presented in Exhibit 1 (continuing operations) and Exhibit 2 (shutdown) are attached to the Exhibit Document filed herewith.

     16.     The next payroll is due to be funded by July 5, 2018. However, if operations are halted, a final payroll would happen shortly after shutdown. In order to avoid immediate and irreparable harm, I have requested that SummitBridge consent to the limited use of SummitBridge's cash collateral, as defined in Section 363(a) of the Bankruptcy Code (the "Cash Collateral") for the expenses and payments and in the order and priority set forth on Exhibit 1 in

the case of continuing operation and as set forth on Exhibit 2 in the case of a shutdown, each of which I believe are necessary to avoid immediate and irreparable harm (collectively the "Approved Expenses").

17. As part of the Cash Collateral agreement, I have requested that SummitBridge agree to an additional carve out from its collateral and the proceeds thereof in the amount of $100,000 bringing the total carve out to $425,000 to be available for payment of approved fees and costs of me and my professionals incurred in the chapter 11 case (the "Carve Out"). The Carve Out would be binding in any subsequent chapter 7 case. There have been no waivers of the right to surcharge collateral under section 506(c), nor is there any waiver in connection with the use of cash collateral.

18. I have provided SummitBridge's financial advisor access to information as it is obtained by me and my financial advisors. SummitBridge is reviewing the cash collateral information, but I am informed and believe that SummitBridge likely will stipulate to the emergency use of Cash Collateral for the Approved Expenses as set forth on either Exhibit 1 or Exhibit 2 in return for a replacement lien on post-petition assets and a limited adequate protection order substantially on the same terms and conditions as the existing Interim Order on Fourth Emergency Motion. SummitBridge still needs to review Exhibits 1 and 2 and provide its consent. The proposed Interim Order on Fifth Emergency Motion for an Interim Order (1) Authorizing the Use of Cash Collateral Pursuant to 11 U.S.C. §363; (2) Scheduling a Final Hearing; and (3) Granting Related Relief is attached as Exhibit 3 to the Exhibit Document filed with the Motion.

19. Based on my years of experience as a Bankruptcy Trustee, and as a consultant on restructuring matters, I believe that the relief requested in the Motion is reasonable and absolutely necessary to avoid immediate and irreparable harm to the estate.

I declare under penalty of perjury that the foregoing it true and correct. Executed on June 27, 2018, at Reno, Nevada.

*/s/ W. Donald Gieseke*
W. DONALD GIESEKE

-5-

D. Gieseke Declaration re Fifth Motion for Interim Use of Cash Collateral