THOMAS A. WILLOUGHBY, State Bar No. 137597
PAUL J. PASCUZZI, State Bar No. 148810
FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP
400 Capitol Mall, Suite 1750
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
twilloughby@ffwplaw.com
ppascuzzi@ffwplaw.com

Attorneys for the Chapter 11 Trustee,
W. Donald Gieseke

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>ECS REFINING, INC.,<br><br>Debtor. | CASE NO.: 18-22453-D-11<br><br>Chapter 11<br><br>DCN: FWP-17<br><br>Date: July 25, 2018 [Per OST]<br>Time: 10:00 a.m.<br>Courtroom: 34<br>501 I Street, 6th Floor<br>Sacramento, CA |

**CHAPTER 11 TRUSTEE'S MOTION FOR AUTHORITY TO SELL DEBTOR'S CUSTOMER LIST AND INTELLECTUAL PROPERTY INCLUDING CERTAIN OTHER PERSONAL PROPERTY RELATED TO DEBTOR'S AMS BUSINESS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE**

W. Donald Gieseke, the duly-appointed and acting Chapter 11 Trustee (the "Trustee") in the ECS Refining, Inc. (the "Debtor") case, by this motion ("Motion") seeks authority to sell all of the Debtor's customer lists and intellectual property, including certain other personal property related to Debtor's Asset Management Services ("AMS") portion of its business (collectively, the "Subject Assets") to Dynamic Recycling, Inc. ("Buyer") free and clear of liens, claims, encumbrances, or other interests pursuant to section 363 of Title 11 of the United States Code (the "Bankruptcy Code"). In support of this Motion, the Trustee relies on the Declarations of W. Donald Gieseke ("Gieseke Declaration") and Miles Staglik ("Staglik Declaration"), the pleadings and papers on file in this case, and such other evidence and argument as may be submitted before

or during the hearing on this Motion.

**INTRODUCTION**

On June 29, 2018, the Trustee closed Debtor's business operations. Prior to closing the Debtor's business, the Debtor provided recycling and asset disposition solutions ranging from e-waste shredding to information technology and industrial asset resale. The Debtor's business consisted primarily of three business lines: the SB 20 program, the end of life program, and the AMS program. Through the AMS program, customers sent old computers and other electronics to the Debtor to have data wiped clean and then the Debtor would sell or dispose of the electronics. Typically, customers retained title to the electronics, but agreed to share the proceeds of any sale with the Debtor as payment for the services the Debtor provided. The Debtor was able to resell certain electronics upon certification that all data had been removed. This Motion relates to the sale of the customer list, intellectual property, and licenses. Also included in the sale is other personal property related to the AMS program.

Buyer has offered $160,000 to purchase the Subject Assets (defined in more detail in the APA which is attached to the Exhibit Document filed herewith, and below), and will pay an additional $30,000 if Buyer is successful in landing Debtor's business with Comcast and two of the Debtor's top four other customers within 45 days of the sale. In addition, Buyer will assist the Trustee in removing AMS program inventory out of certain locations at Buyer's expense. With the AMS customer's consent, the inventory will be moved to the Buyer for processing. If the AMS customer does not so consent, the customer can pick up its inventory from the appropriate Debtor location. The proposed transaction will assist the Trustee in clearing out various leased premises of Debtor's property as well as minimizing issues with Debtor's customers related to concern about inventory with confidential information.

The APA requires the Buyer to comply with all applicable laws and regulations in removing and transporting the Subject Assets. Further, the APA provides that Seller will work with the recycler of all EOL (End of Life) recycling material at the Stockton, CA, Mesquite, TX and Columbus, OH facilities to be sure all devices are destroyed for certified destruction accounts, all material is recycled according to R2 standards, no focus materials are exported to

developing countries and all data containing devices are destroyed with a COR/COD delivered to Seller after the work is completed and a copy is given to Buyer.

**RELIEF REQUESTED**

By this Motion, the Trustee seeks a Court order providing as follows:

1. Approving the sale of the Subject Assets to Buyer for $160,000, subject to overbids, in accordance with the terms and conditions set forth in the Asset Purchase Agreement ("APA") attached to the Exhibit Document as Exhibit A;

2. Approving the sale of the Subject Assets free and clear of liens, claims, and encumbrances, including the lien of SummitBridge National Investments V LLC ("SummitBridge") pursuant to SummitBridge's consent; and

3. For such other relief as is just and appropriate under the circumstances of this case.

**JURISDICTION**

4. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This Motion is brought pursuant to Bankruptcy Code section 363, and Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") 2002 and 6004.

**BACKGROUND FACTS**

5. On April 24, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code ("Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of California ("Court").

6. On May 2, 2018, the Court entered its Order Granting Emergency Ex Parte Motion on Stipulation for Immediate Appointment of Chapter 11 Trustee (Docket No. 91). On May 8, 2018, the Court entered an order appointing the Trustee (Docket No. 99). A creditors' committee has not been appointed.

7. Based on the pleadings filed by the Debtor, the Debtor provides recycling and asset disposition solutions ranging from e-waste shredding to information technology and industrial asset resale. The Debtor has facilities in Santa Clara, Santa Fe Springs and Stockton, California; Medford and Portland, Oregon; Mesquite, Texas; Columbus, Ohio; and Rogers,

1   Arkansas (collectively, the "Premises").  *See* Debtor's Emergency Ex Parte Motion for approval
2   of DIP Financing and use of Cash Collateral, Docket No. 12, pp. 6-7.

3   8. SummitBridge asserts that as of the Petition Date, the Debtor was indebted to
4   SummitBridge in excess of $25,000,000 and additional fees and expenses owed pursuant to
5   applicable loan documents (hereafter such indebtedness and all accrued but unpaid interest, fees
6   and costs and all other obligations, contingent liabilities, and swap liabilities incurred or existing
7   as of the Petition Date shall be referred to collectively as the "Pre-Petition Secured Debt").
8   Gieseke Declaration ¶ 6.

9   9. SummitBridge claims that the Pre-Petition Secured Debt is secured by a valid and
10  perfected first priority lien and security interest in substantially all of the Debtor's property and
11  all proceeds (including insurance) thereof, including but not limited to all of Debtor's accounts,
12  equipment, inventory, goods, work in process, general intangibles, fixtures, trademarks, patents,
13  other personal property assets and all proceeds thereof (the "Pre-Petition Collateral").  *Id.* ¶ 7.

14  10. Since being appointed as the Chapter 11 Trustee in this case, the Trustee has
15  entered into five different cash collateral orders under which SummitBridge was granted and
16  provided with a security interest in and first priority lien and security interest upon all post-
17  petition inventory, chattel paper, accounts and general intangibles and all proceeds thereof and all
18  proceeds of the Pre-Petition Collateral to the extent SummitBridge's cash collateral was used.
19  *See* Dkt. Nos. 162, 184, 225, 231 and 245.

20  11. Also since being appointed as the Chapter 11 Trustee in this case, the Trustee and
21  his professionals worked very hard to implement a process for a reasonably soft landing of this
22  case through a potential sale of the estate's assets.  However, as of June 29, 2018, the Court
23  denied the Trustee's request to use SummitBridge's cash collateral without its consent in order to
24  continue the Debtor's business operations for two additional weeks.  Consequently, the Trustee
25  was forced to close Debtor's business operations effective June 29, 2018.  Gieseke Declaration
26  ¶ 9.

27  12. On July 6, 2018, the Trustee filed a motion to reject each of the unexpired leases
28  related to the Premises effective as of June 29, 2018.  *Id.* ¶ 10.

13. Since Debtor's business closed on June 29, 2018, the Trustee has received numerous phone calls from customers concerned about the status of their equipment that contains confidential information. The Trustee also has received inquiries from landlords of the Premises regarding how the Trustee intends to remove Debtor's personal property from the various Premises. *Id*. ¶ 11.

14. Debtor's customer list is decreasing in value every day because customers are concerned about disposing of their property and are looking for other entities to step into the void left by the shutdown of Debtor's business operations. *Id*. ¶ 12.

15. Buyer has offered $160,000 to purchase the Subject Assets, and will pay an additional $30,000 if Buyer is successful in landing Debtor's business with Comcast and two of the Debtor's top four other customers within 45 days of the sale. Buyer has already deposited $40,000 of the purchase price with the Trustee. *Id*. ¶ 13.

16. As set forth in the APA, Buyer seeks to purchase from the Trustee the following property to the extent it exists: (a) Seller's customer lists, including but not limited to contact information, customer order history, customer data, pricing and sales history, supplier lists, vendor lists, prospect lists, price lists, any and all related vendor and customer relationship software applications including assignment of rights to access and/or ownership of Sugar CRM (license), Makor ERP and CRM (license), and Navision ERP software applications, management, accounting or operational systems software, as well as any ECS server files related to obtaining and servicing the purchased customer list (sales pricing, agreements, customer contact information, addenda, etc., (b) the seller's domain name, DID numbers, website URLs, telephone numbers, email addresses, the Subject Business name "ECS Refining," the Seller's goodwill and existing client accounts, (c) any and all any wheeled totes and wheeled carts located on or about the premises of the Subject Business related to the AMS (asset management services) business, (d) all AMS inbound, work-in-process, and finished goods inventories located at the Stockton, CA and Mesquite, TX locations as of the date hereof, (e) all inventories located at the Columbus, OH location as of the date hereof, and (f) all AMS inbound or WIP inventories located at the Stockton, CA and Mesquite, TX locations that were received from commercial recycling clients

(collectively the "Subject Assets"). Buyer shall not be responsible for any other inventory unless agreed upon in a separate agreement. Buyer shall have exclusive access to the customer list. All sales (and resulting accounts receivable) of the Debtor related to the customer list through the date of execution of the APA shall be the property of the Debtor; all new sales serviced by Buyer thereafter shall be the property of Buyer. The assets sold shall not include any intellectual property or software tied to machinery or equipment. *Id*. ¶ 15.

17. In addition to providing cash for the Subject Assets, the proposed transaction with Buyer benefits the estate in two significant ways. First, Buyer's will remove inventory from three of the Debtor's locations at Buyer's expense. This will assist the Trustee in removing personal property located in Premises for which the Trustee is rejecting unexpired leases and will appease various landlords of those Premises. Second, Buyer will either remove or assist customers in picking up equipment located in the Premises, which will address various concerns of customers regarding security of their equipment which contains confidential information. *Id*. ¶ 16.

18. Overbid Procedure. The APA provides: In the event the Closing does not occur due to receipt of competing bids as part of a section 363 sale under the Bankruptcy Code, the parties agree that Buyer may be permitted to increase the Purchase Price by minimum increments of $10,000.00 (an "Overbid") in such aggregate amount sufficient to match or exceed such competing bids, upon written notice from Buyer to Seller; provided however, that an initial Overbid by another qualified buyer shall be at least $30,000 greater than the original Purchase Price.

19. Bid Protection. The APA provides: In the event the Closing does not occur due to acceptance by Seller of a competing bid, Seller shall, in addition to refunding the earnest money deposit, pay, or cause to be paid, to Buyer a breakup fee in the amount of Buyers reasonable costs and expenses incurred up to Twenty-Five Thousand Dollars and No Cents ($25,000.00).

20. The Trustee is informed and believes that SummitBridge will consent to a sale of the Subject Assets free and clear of its lien as proposed in the Motion. Gieseke Declaration ¶ 18.

21. The Trustee respectfully submits that it is in the best interests of the Debtor's estate and its creditors to authorize the sale of the Subject Assets as set forth in this Motion and

the APA. *Id.* ¶ 19.

**ARGUMENT**

**A. The Sale of the Subject Assets Meets the Requirements of Section 363(b)**

Section 363 of the Bankruptcy Code provides that a trustee, "[a]fter notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363 (b). In considering a proposed sale, courts look at whether the sale is in the best interests of the estate based on the facts and history of the case. *In re American West Airlines*, 166 B.R. 908, 912 (Bankr. D. Ariz. 1994) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)). This requires an examination of the "business justification" for the proposed sale. *In re 240 North Brand Partners, Ltd.*, 200 B.R. 653 (9th Cir. BAP 1996); *In re Wilde Horses Enterprises, Inc.*, 136 B.R. 380 (Bankr. C.D. Cal. 1991). The trustee has "broad power" under section 363 to sell property of an estate, and "the manner of sale is within the discretion of the Trustee." *In re The Canyon Partnership*, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985).

The Trustee believes that the proposed sale of the Subject Assets to Buyer is in the best interests of the Estate for several reasons. First, the Trustee has closed down the Debtor's business operations and the Subject Assets is not necessary for the wind down of the Debtor's operations. Second, as part of the proposed sale transaction, Buyer will be removing at its own cost inventory located on Premises that needs to be removed since the Trustee has rejected the respective leases. Third, Buyer will assist customers concerned with the status of equipment containing confidential information either by disposing of the equipment with the customer's consent or returning the equipment to the customer. The Trustee believes the sale of the Subject Assets to Buyer is the most expeditious and efficient manner to liquidate the Subject Assets.

Based on the factors set forth above, the Trustee believes it is in the best interests of the Estate and its creditors if the Subject Assets is sold as expeditiously as possible.

**B. The Sale of the Subject Assets Free and Clear of Liens and Other Interests Is Authorized by Section 363(f)**

The Trustee requests that the sale and transfer of the Subject Assets be made free and clear of any claims or interests that may be held or asserted against the Subject Assets. The

Trustee submits that it is appropriate to sell the Subject Assets free and clear of liens pursuant to Section 363 (f) of the Bankruptcy Code, with any such liens attaching to the net sale proceeds of the Subject Assets to the extent applicable. Section 363 (f) of the Bankruptcy Code authorizes a debtor or trustee to sell assets free and clear of liens, claims, interest, and encumbrances if:

    (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interests;

    (2)    such entity consents;

    (3)    such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

    (4)    such interest is in bona fide dispute; or

    (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f).

Because Bankruptcy Code section 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Subject Assets "free and clear" of liens and interests. *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) ("[Section 363(f)] is written in the disjunctive, not the conjunctive. Therefore, if any of the five conditions of § 363(f) are met, the Trustee has the authority to conduct the sale free and clear of liens."); *In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same); *Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code section 363(f) is written in the disjunctive; holding that the court may approve the sale "free and clear" provided at least one of the subsections of Bankruptcy Code section 363(f) is met).

With respect to any interest of SummitBridge in the Subject Assets, the Trustee believes that section 363(f)(2) will be met by SummitBridge's consent to sell the Subject Assets notwithstanding any interest of SummitBridge in that property. The Trustee is not aware of any other liens against the Subject Assets.

**C.    Relief Under Bankruptcy Rule 6004 (h) Is Appropriate**

Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of

property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Trustee requests that any order approving the sale of the Subject Assets be effective immediately by providing that the 14-day stay under Bankruptcy Rule 6004(h) shall not apply to any order granting this Motion.

The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, Collier suggests that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 A. Resnick & H. Sommer, eds., *Collier on Bankruptcy* ¶ 6004.11 (16th ed. 2018). Furthermore, Collier provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. *Id*.

The Trustee hereby requests that the Court waive the 14-day stay period under Bankruptcy Rule 6004(h) or, if an objection to the sale is filed, reduce the stay period to the minimum amount of time needed by the objecting party to file its appeal.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter an order granting the relief requested herein.

Dated: July 13, 2018

    FELDERSTEIN FITZGERALD
    WILLOUGHBY & PASCUZZI LLP

    By:*/s/ Paul J. Pascuzzi*
        PAUL J. PASCUZZI
        Attorneys for the Chapter 11 Trustee,
        W. Donald Gieseke